IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS ANTOINNE TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-0453-N |
| | § | |
| DEUTSCHE BANK AG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Marcus Antoinne Taylor's motion to strike exhibits ("Pl.'s Mot. Strike") [Doc. 19]. The Order also addresses Defendants Deutsche Bank AG ("Deutsche Bank"), DBAH Capital, LLC ("DBAH"), and DB Investment Managers, Inc.'s ("DB Investment") motion to dismiss the amended complaint ("Defs.' Mot. Dismiss") [17]. Because the Court finds it can consider the exhibits used in support of the Defendants' motions to dismiss, it denies Taylor's motion. Furthermore, because Taylor's claims are time-barred, the Court grants Defendants' motion.

### I. THE UNDERLYING DISPUTE

Taylor is a former partner of Aldus Equity, LLC ("Aldus"), a now defunct private equity firm, which formerly provided consulting services to public pension funds. Taylor's job responsibilities included performing due diligence on investments. Another Aldus partner, Saul Meyer, "focused on client development." Pl.'s Am. Compl. [14]¶10. In 2005, Meyer allegedly formed close relationships with placement agents Marc Correra and Hank

ORDER – PAGE 1

Morris and diverted most of his investment recommendations for both New York Retirement and New Mexico Retirement toward private equity funds that Morris and Correra represented. Upon learning that Meyer accepted a $10,000 kickback in the form of a "Christmas Gift" from Correra, Aldus terminated Mr. Meyer's employment in October, 2006.

During this time, Deutsche Bank was in talks to acquire an interest in Aldus. Upon notification that Meyer was terminated, Deutsche Bank allegedly "would not proceed with the Aldus buyout unless Mr. Meyer was reinstated back into the firm." *Id.* at ¶ 36. Moreover, Deutsche Bank executive Thomas Curtis allegedly "represented to Taylor that Deutsche Bank's rigorous regulatory compliance system had the capacity to prevent future misconduct by Mr. Meyer." *Id.* at ¶¶ 34, 37. In June, 2006, however, Deutsche Bank entered into a "Placement and Service Agreement" with Correra's company, Cabrera Capital Markets, which required Deutsche Bank to pay Correra "a staggering 25% of all management fees earned on any investment he brought to Deutsche Bank, and an equally outsized 20% carried interest for the lifetime of any such investment." *Id.* at ¶ 40. In December, 2006, Defendant DBAH, a subsidiary of Deutsche Bank, acquired a controlling interest in Aldus.

Taylor resigned from Aldus in 2007 and entered into a Purchase, Settlement, and Release Agreement ("PSR Agreement") under which he sold his ownership stake back to Aldus. Under the agreement, Taylor remained an equity owner of Aldus until the full purchase price was paid. Following his departure from Aldus, Taylor alleges that Deutsche Bank "wielded complete operational control over Aldus" and used Correra to secure public pension investment funds under a "pay-to-play" scheme. *Id.* at ¶¶ 51, 58. Some of the

contracts governing these investments allegedly required Aldus and Deutsche Bank to disclose any conflicts of interest that would impact Aldus's investment decision, but Deutsche Bank allegedly failed to disclose its arrangement with Correra.

In August 2009, Meyer was indicted for fraud by the New York State Attorney General and was specifically charged with orchestrating a "pay-to-play" investment scheme relating to his relationship with Morris. Later that year, Deutsche Bank terminated its ownership interest and control of Aldus. In October, 2009, Meyer pled guilty to felony investment fraud, and his allocution appeared in the *Wall Street Journal*.

Taylor alleges that he is still owed money under the PSR Agreement. He also alleges that he has suffered reputational harm as a result of Deutsche Bank's conduct, as evidenced by all of his clients at his new investment firm, United Investment Managers, terminating their relationship upon "perceiv[ing] him to have a former association with Deutsche Bank and Aldus'[s] 'pay-to-play' pension fund scandal." *Id.* at ¶ 70–71. He brings claims against Defendants for fraud and fraudulent inducement, breach of fiduciary duty, tortious interference, conspiracy to commit fraud, and aiding and abetting. Defendants now move to dismiss the claims. Taylor moves to strike the exhibits contained in Defendants' motion.

## II. THE COURT DENIES TAYLOR'S MOTION TO STRIKE

The Court first considers Taylor's motion to strike the exhibits that Defendants submitted in support of their motion to dismiss. These documents include the confidential Consolidation and Purchase Agreement under which Deutsche Bank acquired Aldus and

court filings from other lawsuits.  The Court finds these documents can be properly considered at the motion to dismiss stage and accordingly denies Taylor's motion.

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories.  First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted).

Each of the five exhibits contested by Taylor falls into one or more of the enumerated categories discussed above, and therefore the Court may consider them at the motion to dismiss stage.

Exhibit 1 is a copy of "the consolidation and Purchase agreement by and among DBAH Capital, LLC, Aldus Capital, LLC, *et al.*"  Defs.' Mot. Dismiss App. 001.  Because Taylor references this document in footnote 7 of his amended complaint, *see* Pl.'s First Am. Compl. ¶44 n.7, the Court can properly consider it.  *See Dorsey*, 540 F.3d at 338.

Exhibit 2 is a copy of the first amended complaint that was filed in June, 2009 in *State of New Mexico ex rel. Frank Foy v. Austin Capital Management, Ltd.,* No. D-101-CV-2009-01189 (N.M. First Judicial Dist.) ("Foy Litigation I"), in which Taylor was a named defendant.  Defs.' Mot. Dismiss App. 001.  Exhibit 3 is a copy of a limited entry of appearance which Taylor's counsel filed in the Foy Litigation in November.  *Id.* at App. 002.  The Court may consider these document because Taylor refers to this lawsuit in his complaint.  *See* Pl.'s First Am. Compl. ¶ 60; *see Dorsey*, 540 F.3d at 338.  Additionally, the Court may properly consider them because the Court can take judicial notice of the Foy Litigation.  *See Reneker v. Offill*, 2010 WL 1541350, at *5 (N.D. Tex. 2010) ("Courts may take notice of the judicial record in prior related proceedings.").  Finally, the Court can consider the pleading (Exhibit 2) because it is central to Taylor's claim.  As Defendants note, the allegations about Frank Foy and Deutsche Bank's dealings with the New Mexico state agency comprise twelve paragraphs of Taylor's complaint.  Defs.' Reply [20] 5; *see* Pl.'s First Am. Compl. ¶¶ 50–61.  Because these dealings are central to Taylor's complaint and Taylor references the Foy Litigation in his complaint, the Court may properly consider the Foy Litigation pleadings.  *See Sullivan*, 600 F.3d at 546.

Exhibit 4 is a copy of the Third Amended Complaint filed in May, 2009, in *S.E.C. v. Henry Morris*, No. 09-CV-2518 (S.D.N.Y) in which Aldus was named as a defendant ("S.E.C. Litigation"). Defs.' Mot. Dismiss App. 002. Exhibit 5 is a copy of the Complaint filed in May, 2009, in *DiNapoli v. Aldus Equity Partners, L.P.*, No. 3390-09 (Sup. Ct. Albany County), which named Taylor as a defendant ("New York Comptroller Litigation"). *Id.* at App. 002. Both of these documents are a matter of public record and the Court may consider them. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand"). Moreover, the Court may consider these documents because they are not submitted to prove the truth of the statements therein, but rather to show what statements appear in the documents. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (noting that, in considering public disclosure documents at the 12(b)(6) stage, "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents").

### III. THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the complaint on the grounds that the applicable statute of limitations bars the claims stated therein. Because the Court agrees, it need not address Defendants' additional arguments for dismissal.

### A. The Legal Standard

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer*, 484 F.3d at 780. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." *Mann v. Adams Realty Co., Inc*, 556 F.2d 288, 293 (5th Cir. 1977). A court should grant dismissal under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Kaiser Aluminum & Chem. Sales, Inc.*

*v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982)).  Thus, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007).

### B.  The Statute of Limitations Bars Taylor's Claims for Fraud and Fraudulent Inducement

Under Texas law, fraud claims have a four-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4).  A claim for fraud (and fraud in the inducement) accrues "on the discovery of the fraud or at such time as the fraud might reasonably have been discovered through the exercise of reasonable diligence." *Cook-Bell v. Mortgage Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 589 (N.D. Tex. 2012).  "Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with reasonable diligence, would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law." *McMeens v. Pease*, 878 S.W.2d 185, 188 (Tex. App. – Corpus Christi 1994, writ denied).

Similarly, the common law discovery rule "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001).  The discovery rule "applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the

evidence of injury is objectively verifiable.'" *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc*., 918 S.W.2d 453, 456 (Tex. 1996)).[1]

Taylor filed his complaint on February 5, 2014. Accordingly, the four-year statute of limitations precludes any claim for fraud that accrued before February 2010. The Court must therefore determine at what time Taylor could have reasonably discovered his fraud and fraudulent inducement claims through reasonable diligence. Because the Court finds that these claims were reasonably discoverable in 2009, the four-year statute of limitations precludes these claims.

Although Taylor contends that "[i]t was not until 2012, when Mr. Taylor finally obtained a copy of Deutsche Bank's secret kickback agreement with Mr. Correra, that Mr. Taylor discovered Deutsche Bank's fraud,"[2] the date of the actual discovery of the fraud is

---

[1]Taylor also attempts to invoke the doctrine of fraudulent concealment, *see* Pl.'s Resp. 9. Under the doctrine of fraudulent concealment "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). Where fraudulent concealment applies, the limitations period is tolled "until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). Because fraudulent concealment doctrine generally requires the same analysis that applies to the discovery rule, *see Williams v. Deutsche Bank Nat. Trust Co.*, 2011 WL 891645, at *6 (W.D. Tex. 2011), the Court considers the fraudulent concealment doctrine concurrently with its consideration of the discovery rule.

[2]Defendants contend that this statement is "demonstrably false" because the nature of this agreement was revealed in 2009 lawsuits. *See* Defs.' Mot. to Dismiss 8–10. For example, in the Foy Litigation, the plaintiffs submitted a chart prepared by New Mexico State agencies that included the financial terms of Deutsche Bank's placement agent

legally irrelevant for statute of limitations purposes; it is the date of reasonable discovery utilizing diligence that matters. *See supra*. Defendants point to numerous facts that put Taylor on notice of the claims asserted in this action by 2009 at the latest. *See* Defs.' Mot. Dismiss 2–3. For example, according to his amended complaint, in 2006, Taylor discovered that Meyer was engaged in a pay-to-play scheme and that Deutsche Bank insisted Meyer be reinstated despite knowing about Meyer's misconduct. In August 2009, Meyer was indicted for engaging in pay-to-play schemes that Taylor alleges Deutsche Bank promised to stop. In October 2009, Meyer pled guilty and his allocution, in which he admits the conduct continued until February 2009, was published in the *Wall Street Journal*.

Defendants also highlight numerous lawsuits involving Aldus, Meyer, Taylor, and Deutsche Bank. In 2009, the SEC sued Meyer and Aldus, and the third amended complaint asserts the alleged misconduct continued until at least May 2007. *See* Defs.' Mot. Dismiss App. 267. This is months after Taylor alleges that Deutsche Bank promised to end Meyer's misconduct. At the time of the SEC Litigation, Taylor was still an investor in Aldus. That same year, the New York State Comptroller sued Aldus, Meyer, and Taylor, and again the complaint asserted the alleged misconduct continued until at least May 2007. *Id.* at App. 306. A third lawsuit filed in 2009, the Foy Litigation (a *qui tam* action), named Aldus, Deutsche Bank, and Taylor as defendants and included allegations involving relationships

---

agreement with Cabrera Capital. *Id.* at 9. Because the Court finds Taylor's contention regarding the date of discovery legally irrelevant, it need not address whether the statement is demonstrably false.

between Deutsche Bank and Correra and misconduct by Deutsche Bank. *See id.* at App. 192 ("HFV paid kickbacks to Marc Correra through Cabrera Capital, and also through Barrett Wissman. TAG paid kickbacks to Marc Correra (among others) through Cabrera Capital. Deutsche Bank Topiary Trust also paid kickbacks through Cabrera Capital."). The allegations asserted in the Foy Litigation, in which Taylor was a defendant and made an appearance, *see id.* at App. 240–243, directly contradicts his assertion that he was unaware of the fraudulent activity between Correra and Deutsche Bank until 2012.

Taylor attempts to minimize the effect of the Foy Litigation by stating that "[t]he only public allegation against Deutsche Bank came from Mr. Foy, whose *qui tam* complaint alleged a typical, 0.5% placement agent agreement with Mr. Correra that Mr. Foy alleged was never actually paid."[3] Pl.'s Am. Complaint ¶ 73; Pl.'s Resp. 6. This is irrelevant. The Foy Litigation complaint expressly states that Corerra was receiving kickbacks and Deutsche Bank was paying them. "[T]he limitations period is not tolled until a party knows all the details and evidence which may be required to prove his cause of action; rather, the period begins to run when the party discovers, or should have discovered, the general nature of his injury." *SB Int'l, Inc. v. Jindal*, 2007 WL 1411042, at *4 (N.D. Tex. 2007). Taylor did not need to know the precise details of the arrangement to discover that he could have a claim for fraud and fraudulent inducement against Defendants.

---

[3]The Foy Litigation Complaint actually summarized the precise economic terms of the arrangement in an exhibit to the complaint. *See* Defs.' Mot. to Dismiss Ex. 2, at its Ex. 2, App. 237 ("[F]irst 2 yrs, 25% of mgmt & incentive fees; thereafter 20% of such fees[.]").

Taylor argues that the statute of limitations should begin to run on the date his first client left and Aldus defaulted on the Separation Agreement, both of which occurred in 2010. The Court finds this argument unavailing. "[T]he discovery rule operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the 'nature of his injury.'" *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). "Discovering the 'nature of the injury' requires knowledge of the wrongful act and the resulting injury." *Id.* The issue is, therefore, how to define Taylor's injury. The Texas Supreme Court has defined a "legal injury" as "an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *Houston Waterworks Co. v. Kennedy*, 70 Tex. 233, 8 S.W. 36 (1888) (internal quotation marks omitted)). This definition clearly contemplates a difference between legal injury and subsequent "damage." In light of this standard, the Court declines to adopt Taylor's definition of his injury. Such a broad definition would reset the statute-of-limitations clock anytime Taylor suffered additional damage as a result of alleged bad conduct that occurred as far back as 2006. In reviewing Taylor's complaint, his injury is more properly defined as harm to Taylor's reputation and Aldus' financial downfall. That his clients left and that Aldus defaulted under the Separation Agreement are inevitable consequences of this injury, not separate injuries in and of themselves. Taylor should have discovered his injury – that his reputation was

damaged and Aldus, caught up in allegations of misconduct, would soon become defunct – by 2009.

The Court finds that the factual content described above, especially the 2009 lawsuits, would have "excited inquiry into the mind of a reasonably prudent person, which, if perused by him with reasonable diligence, would lead to the discovery of the fraud." *McMeens*, 878 S.W.2d at 188.  Because none of these facts occurred after 2009, the four-year statute of limitations for fraud claims bars Taylor's claims for fraud and fraudulent inducement.

### *C.  The Statute of Limitations Bars Taylor's Claim for Breach of Fiduciary Duty*

Under Texas law,[4] breach of fiduciary duty claims have a four-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5).  Although Taylor does not allege on what date Deutsche Bank breached its fiduciary duty, it must have occurred while the parties had a fiduciary relationship. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (providing that the existence of a fiduciary relationship is one element of a breach of fiduciary duty claim); *Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 798 (N.D. Tex. 2010) ("No breach of fiduciary duty can arise when no relationship exists between the parties.").  By October, 2009, Deutsche Bank no longer had

---

[4]Regardless of whether Texas law governs the substance of the breach of fiduciary duty claim, Texas statute-of-limitations law applies to the claim.  *See Armstrong v. Am. Home Shield Corp.*, 2001 WL 34119165, at *10 (N.D. Tex. 2001) *aff'd*, 333 F.3d 566 (5th Cir. 2003) ("Because statutes of limitations are generally procedural for choice-of-law purposes, the forum state's statute of limitations applies even if the parties' contract designates the substantive law of another state.").

an ownership interest in Aldus, and therefore at that time it ceased to have a fiduciary relationship with Taylor. Therefore, any claim for breach of fiduciary duty must, at minimum, have been brought four years from late 2009.

Courts have applied the discovery rule to breach of fiduciary claims. *E.g.*, *Freuden v. Hibernia Nat. Bank*, 2009 WL 2045158, at *2 (Tex. App. – Beaumont 2009, pet. denied). But "when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.2d at 8. For the reasons stated in subpart III(B), the Court finds that any alleged misconduct on the part of Defendants should have been apparent to Taylor by 2009 at the latest. Because Taylor should have known of his claim for breach of fiduciary duty at that time, this claim is time barred.

### D.  The Statute of Limitations Bars Taylor's Claim for Tortious Interference

Tortious interference claims are subject to a two-year statute of limitations, which begins to run on the date the cause of action accrues. *See Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 776 (Tex. App. – Dallas 2005, pet. denied). "A cause of action for tortious interference with an existing contract does not accrue until the contract is interfered with and harm caused to the plaintiff." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 116 (Tex. App. – El Paso 1997, pet. denied). Again, Taylor does not allege on what date Defendants supposedly interfered with the PSR Agreement that he had with Aldus. He does, however, apparently allege that he and Aldus entered into the PSR Agreement some time between October 2007 and January 2008. Because Deutsche Bank "terminated its ownership interest

and operational control over Aldus" in late 2009, this is feasibly the latest period of time Deutsche Bank could have interfered with the PSR Agreement. Moreover, Aldus defaulted under the PSR agreement some time in 2010. Based on all of the facts that occurred up to 2009, *see supra* subsection III(b), Taylor had sufficient information to know he might have a claim against Deutsche Bank for interference with the PSR by 2010, at the very latest. Because he did not bring this cause of action until 2014, this claim is time barred.

### E. The Statute of Limitations Bars Taylor's Claim for Conspiracy to Commit Fraud

Conspiracy to commit fraud claims are subject to a two-year statute of limitations. *See Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719 (Tex. App. – Houston [14th Dist.] 2010, no pet.). Because "the discovery rule applies to conspiracy to commit fraud," the statue of limitations begins to run when Taylor "knew or should have known of [his conspiracy to commit fraud] claim[]." *In re Estate of Herring*, 970 S.W.2d 583, 586 (Tex. App. 1998). For the reasons stated in subpart III(b), the Court finds that Taylor should have known of his claim by October 2009, at the latest. Therefore, any such claim should have been brought by October 2011. Because Taylor's claim for conspiracy to commit fraud is time barred, the Court dismisses the claim.

### F. The Statute of Limitations Bars Taylor's Claim for Aiding and Abetting

In his fifth cause of action, Taylor alleges that Deutsche Bank aided and abetted Meyer in the commission of a tort, specifically fraud. *See* Pl.'s First Am. Compl. ¶¶ 66, 100–104. Whether Texas recognizes a cause of action for aiding and abetting fraud is

unsettled. *See Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996) ("[W]hether [a concert-of-action] theory of liability is recognized in Texas is an open question."); *Span Enterprises v. Wood*, 274 S.W.3d 854, 859 (Tex. App. – Houston [1st Dist.] 2008, no pet.) ("[I]t is not settled whether 'Knowing Participation/Aiding and Abetting' fraud is a viable cause of action in Texas."). Assuming, however, that Texas law does recognize this cause of action, a four-year statute of limitations would likely apply. *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 647 (5th Cir. 1999) (making an *Erie* guess that under Texas law "where a claim of fraud is based on a defendant aiding and abetting a co-defendant, the appropriate limitations period is the same as the underlying fraud, four years"). For the reasons stated in subpart III(b), the Court finds that Taylor should have been aware of this claim by October 2009. Because the claim is therefore time barred, the Court dismisses it.

### G.   The Court Does Not Grant Leave to Replead

Taylor filed his initial complaint [1] on February 5, 2014. Defendants moved to dismiss the initial complaint on March 28, 2014. On April 17, 2014, Taylor amended his complaint and removed or altered the following allegations:

> 43. Throughout 2007, *it became increasingly clear to Mr. Taylor* that, contrary to Mr. Curtis' representations in October 2006, Deutsche Bank had no interest in curtailing any of Mr. Meyer's illicit investment schemes with politically-connected placement agents. If anything, based on DB Investment's ongoing relationship with Mr. Correra, Deutsche Bank instead actively encouraged Mr. Meyer's misconduct and ignored myriad securities law.

> 45. Unwilling to participate in ongoing securities law violations at Aldus (then controlled by DBAH Capital), and

> *believing that he had no other option in light of Deutsche Bank's*
> *refusal to follow the law*, Mr. Taylor decided to resign from Aldus
> in October 2007.

Compl. [1] ¶¶ 43, 45 (emphasis added).  In his amended complaint, Taylor alleges that

"[t]hroughout 2007 [he was] . . . left completely in the dark about what was going on[,]" *see*

Am. Compl. ¶ 47, and that he left Aldus because he had essentially been "relegated to a

menial role in the firm," *id*.  The amendment was apparently an attempt to prevent a

determination that the statute of limitations barred Taylor's claims by removing any

indication that Taylor knew of Defendants' alleged conduct during 2007.  Therefore, Taylor

has already attempted to replead his case.  Furthermore, Taylor cannot evade the existence

of the 2009 lawsuits through artful pleading, and any further attempt to replead would be

futile.  *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) ("The Supreme

Court lists five considerations in determining whether to deny leave to amend a complaint:

'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of the allowance of the amendment, [and] futility of the amendment . . . '" (alteration

in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).  Accordingly, the Court

does not grant leave for Taylor to replead.

### CONCLUSION

The Court denies Taylor's motion to strike exhibits and grants Defendants' motion

to dismiss.

ORDER – PAGE 17

Signed November 24, 2014.

_____
David C. Godbey
United States District Judge